0830015 United States v. Threadgill. Thank you, Your Honor. Again, my name is David Ness and I'm representing Mr. Threadgill. This case is somewhat similar to the last case, although maybe a little more complicated with another wrinkle. I guess first going to what I view as the easier issue, and that is, it deals with counts 7 and 8, and those are the ones. And as I read the indictment and the change of plea hearing and the, so not only the charge but also the evidence that supported Mr. Threadgill's guilty pleas, it certainly appears to me that we have the same problem, the Davenport-Shales problem, in Mr. Threadgill's case. Well, Mr. Threadgill apparently admitted that he took some pictures and he also admitted that he downloaded some pictures. He did do that, but if you look at the indictment, and I guess I'll back up, in that case, he's really no different than Mr. Shales. Mr. Shales did essentially the same thing, taking pictures and downloading them and morphing them on the computer. Okay, but at least in this case, the factual basis flushed out two different events at least. It did, right. Okay. But the indictment essentially... I understand the indictment is problematic, but then we go past the indictment. There was no objection to the indictment. There was no request for a bill of particulars. So now we're pleading guilty and the problems seem to have been sorted out at the change of plea proceeding, where the guy says, I took some pictures, I downloaded other pictures, and so I guess my question is, why isn't this cured by the plea proceeding? Well, if you look at his admissions to Counts 7 and 8, and I think those are on pages 44 and 45 of the transcript in the excerpts of record, that's of the transcript, not the excerpts, but his admissions go only to child pornography that he downloaded on the computer and that he possessed. He wasn't at that point talking or admitting to, at least in regard to Counts 7 and 8, that any of the images that he took had anything to do with 7 and 8. That conduct was taken care of in Counts 1 through 6. And so Counts 7 and 8- Is 7 and 8 the only then problem we have with respect to double jeopardy? No, no. I think that there's also problems with double jeopardy with respect to- Different problems. Different problems, yeah. I wanted to get, I was thinking maybe easier, but at least with 7 and 8, I think we're talking about, there's no distinction made between the porn that was involved in the receipt and the porn that was involved with the possession. Okay, so if you're right about 7 and 8, then we have to tell the judge to go fix, get rid of the possession and- One or the other, yes. What's the other double jeopardy problem? Let me just double ask, if that's the case for Mr. Threadhill, is it also not a resentencing, it's simply a vacation of one of the- I would ask that it be remanded for resentencing. And Mr. Threadgill has also made arguments regarding the reasonableness of his sentence, which is, I guess, a different issue than the double jeopardy. But I would ask if the court's- This one, if you're successful in this one, you would ask for resentencing? That's correct. That's correct. Now, regarding to the child exploitation charges, there were two that involved counts 1 and 2, another victim that involved counts 2 and 3, and a third that involved counts 3 and 4. I think our disagreement with the government on the child exploitation charges and the double jeopardy issue there is whether or not the Blockberger test needs to be applied with respect to analyzing the double jeopardy with respect to those particular charges. And it appears to me that if one looks at Section 2251, and he was charged under 2251A and 2251B, that really what we're talking about is we're talking about one statute, one statute with one penalty provision, which is in subsection E. And the penalty provision provides that any individual who violates or attempts or conspires to violate this section shall be fined under this title. And it goes on. And so the child exploitation charges, I think, should be looked at under the analysis set forth in this Court's decision in Keene. And the cases, the United States Supreme Court cases, the Keene sites, those being the Santa Bria and Albarnez cases, it's involving essentially one statute that can be violated in a couple of different ways, and it sets forth one penalty provision. And therefore, I don't think that the Blockberger test necessarily has to be applied or should be applied, as a matter of fact. Once again, if you're right about that, then we would order that one of the counts with respect to the niece, one with respect to the kid being babysat and the granddaughter, one of those counts for each of those victims would have to be vacated. That's correct, yes, sir. Does that affect the sentencing? Probably not directly, but again, I am asking for a remand on the sentencing. They were in concurrent sentencing. Sure, yes. And I have nothing further. Hello again, Mr. Clark. In some ways, being able to argue the Drost case first is helpful, I think, in looking at the difference in the factual background of these two cases. The problem, as we've just discussed, whether it be Davenport, Kuczynski, and Drost, is that there really is no way to distinguish, or any good way to distinguish between the evidence that's been provided. It was both possessed and received, but based on what came forward in the offer of proof and what is charged, it is difficult to be able to distinguish between them. The difference when you get to Threadgill, as I think the panel has zeroed in on, is the fact that we have, without doubt, fully admitted homemade child pornography. In other words, we have possession of child pornography that could not have been received. It simply is evidence of possession of child pornography that could not have been received. I thought the same thing until I went back and read the transcript. That discussion takes place when you're talking about the sexual exploitation of the child charges as being a custodian or parent. When you get to 7 and 8, there's no distinction there. He's talking about in 7, he said, well, yeah, I got some things, I received them. But then in 8, he said, well, I guess that you're talking about that's possession of child pornography. But nowhere is any reference to tie up 7 or 8 to the possession of items that hadn't been received. So that's where I was having trouble, if you read the transcript carefully. There's no, everything you're talking about is true, but it doesn't relate to 7 and 8, at least as what he's pleading to. I think that the author proof, which was not disputed, does suggest that he acknowledges taking the sexually explicit photos and certainly of taking the movies of him having intercourse with his niece. And the fact that those videos were taken and possessed, I think, is part of the record. I don't think he never denies that. I think there is a question, again, goes back to the pleading question, the indictment question, is the term computer files. It's even worse in this situation because there could have been a specification, but not having one, we have no idea what you would have actually put on of all of the possibilities. I mean, I think there's a sort of vagueness problem with these indictments anyway. I don't know how they're supposed to know what you're going to actually put on as evidence as to the 7 and 8. But you could have proved them up without ever getting near the pornography that he took, created himself, for all we know. We don't know. From the essay, I think in response to that, again, I think we would argue that there was no failure of proof. There may be problems with the indictment. From the acknowledgment, as Judge McEwen said, as to 7 and 8, no one mentioned these things that he created himself. So as to what he specifically acknowledged in the plea, colloquy, it doesn't seem to me are very good ground. The only possibility is the offer of proof, which does talk about all of it without being specific as to what goes to what. But that leads to my observation that for that very reason, I mean, we have no way of knowing what you would have actually put on if you tried it. I think, again, I think there are issues of designation. I think, again, in the Gano court, and I think what this court is moving in that direction, I think the lesson learned is with indictment with offers of proof, plainly needing to link things up. I think the cleanest way is we've seen probably is with the Gano, where you simply allege from the very get-go a specific file name, what have you, so that there is no dispute. You end up with huge numbers of counts as a result in order to protect yourself. Correct. And I think that that is one of the things the government, in the arguments, we could have perhaps gone back and charged 100 counts, 200 counts. It doesn't seem to be much point of that. On the other side, I would, the government certainly would disagree that this is not a blockburger case. This is a classic blockburger case. United States v. Keene does not apply. If Keene is required to apply here, then Keene should have been applied in Davenport, at least as far as I view it. We're talking about different statutory provisions just because they may be part of the same overall statute is not the basis for deciding whether Keene applies or blockburger. This is clearly a blockburger case. I think the analysis that we've done in our brief is accurate. We are dealing with the same conduct. That distinction is made, whereas in the Drost, the other one we're talking about, we really have separate conduct. Here we admit that it's the same conduct, but blockburger applies and we have different elements for each offense. Certainly, we do not have to prove parentage or custodial control in the one, and in 2251A, we do not have to, or we have to prove some coercive inducive act. So they definitely both require proof of the different element. Blockburger does apply because they have different elements. But get consecutive sentences for 2251A and 2251B conviction for the same. Could the courts have done consecutive sentences? If they wanted to, for one. There's not a double punishment problem there? No, because blockburger, I think that's the difference is with Drost, we've acknowledged that if we have conviction of both, and if we cannot establish our side of things, in other words, there is a double jeopardy problem, it's at the time of punishment is where the double jeopardy problem occurs. We would have a double jeopardy problem in Drost, but on our separate offenses constitutionally under blockburger, therefore, you would not have any concern, there would not be a double jeopardy problem, meaning that if the court had wanted, he could have done consecutive sentences. He did not here, which is perhaps a question on the sentence or remand issue with these counts, because there is no double jeopardy problem here. Is that, I mean, that's the other question I had in that regard, that even if, you know, the defense is right about this, would the fact that there weren't consecutive sentences go to the plain error issue, that even if they were right, there still would be no plain error, because you don't have the sentencing? Well, clearly, I would agree. There's no, number one, of course, we don't believe there has been any error, because, but even if it was, it was certainly not plain. Then I think you get into the issue is do we have a miscarriage of justice? Certainly, we aren't to that point. I think there is every reason to see what the judge did was correct. But I think it does raise an issue of would it have been significantly different? It would not, as was done. In other words, the court did do concurrence, so it did not harm him. If there was a remand for resentencing, I do not see any reason that the court could not. With a lifetime sentencing guideline range, he's already at 126, or he's already at 70 some odd years. But on the legal theory principle, no, they could have been consecutive, because there's not a double jeopardy problem here. I think he could have done consecutive sentences. It would not have made any difference, any appreciable difference, with the number of years already given. Any questions? Anything else, Mr. Larkin? No. Thank you. Mr. Ernest, you get the last word, sir. I can just raise one point. I think the one thing that needs to be remembered that in these cases, when we're talking about multiple punishments in the same proceedings for essentially the same act, the double jeopardy issue really gets entangled in with what's congressional intent. Congress could certainly, under Section 2251, mandate consecutive sentences and separate punishments for 2251A and 2251B. The fact of the matter is that I think a fair reading of the statute indicates that Congress did not intend that. Congress states in the penalty provision that if you violate this section, this is what you will get. Really, so in reviewing Section 2251, I think you just have to go back to statutory analysis, which takes into account, you know, take the plain reading of the statute, and also I think the rule of lenity comes into play. And I would just respectfully submit that although there would not be a constitutional double jeopardy problem if Congress mandated separate punishments, there is a double jeopardy problem if the Court exceeds what Congress says. And that's what the Court did in this case. I'm having trouble understanding. I could understand an argument that said that one of these didn't apply to this circumstance as a matter of congressional intent. And I suppose the candidate might be, well, one or the other. I mean, the notion being that Congress intended in a situation in which you do have custody of control to prosecute under B and not under A. But that's not what you're saying. You're saying that the two of them together are the problem. You're not saying which one applies. Yeah, I'm not saying which one applies. It's the two of them together. And why don't you apply a block burger to that? I'm really having trouble understanding your argument. Well, let me back up a minute. If you did apply a block burger, do you agree that there would not be double jeopardy? Yes, I think if you apply... Explain why you would not apply a block burger. Because what we're talking about here, really, is a single statutory provision. Well, that's not so. I mean, you have 2251A and you have 2251B. That's not at all unusual. I mean, there are many times when you're going to have different statutes set up that way in subsections of a single section. I think, like, if you go back and you look at Missouri v. Hunter, that's the United States Supreme Court case, and that's kind of where this separate provision language comes from. That involved two separate statutes, you know, in separate parts of the code. Now, the Davenport issue involves one statute, admittedly, but each of the provisions in Davenport have separate penalties, and in fact, different penalties. So that's when the block burger issue comes into play. Here, we have one statute. It sets forth different ways that you can violate the statute, and then it has only one penalty provision. There's certainly... There's basically one provision that provides multiple ways you can violate it, and with one penalty... But, for example, look at D, all right? D certainly bears no particular connection to A or B, right? But in your theory, you'd still have the same problem. I think you would, yes. Even though it doesn't... It's dealing with reproducing, displaying, distributing, et cetera, the visual production, the depiction. You don't have the overlap problem that you do as to A and B. It just happens to be sitting on the same statutory section. And that's... I will acknowledge that. But then I think you've got to go down to the penalty provision, and the penalty provision doesn't... I mean, Congress could... I mean, they know how to do it. I mean, they could put a different penalty provision for each particular subsection. Or they could do it like the mail fraud statute, where they say every different mailing is a different crime subject to a different penalty. Here they didn't do that. They only have one penalty provision. And so I think if you apply the analysis of Keene and the cases cited in Keene, the Blackburger analysis doesn't really come into play, but it is double jeopardy because congressional intent, especially when applying the rule of lenity, indicates that a person can be punished once for violating the statute. Thanks, Mr. Nilsen. Thank you. Dr. Lahr, thank you. The case just argued is submitted.
judges: Silverman, McKeown, Berzon